**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| GARY GRAVELYN, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br><br>KONINKLIJKE PHILIPS N.V.; PHILIPS HOLDING USA, INC.; PHILIPS NORTH AMERICA LLC; PHILIPS RS NORTH AMERICA HOLDING CORPORATION; PHILIPS RS NORTH AMERICA LLC; and DOES 1–30, inclusive,<br><br>    Defendants | Case No.:<br><br><br><br><br>**COMPLAINT FOR DAMAGES (Strict Products Liability – Negligence – Failure to Warn –Breach of Implied Warranty – Fraudulent Concealment)**<br><br>**DEMAND FOR JURY TRIAL** |

**I. INTRODUCTION**

1. This action arises from Defendants' design, manufacture, marketing, distribution, and sale of defective continuous positive airway pressure ("CPAP") and bi-level positive airway pressure ("BiPAP") devices sold under the Philips Respironics brand.

2. The recalled devices incorporated polyester-based polyurethane ("PE-PUR") sound-abatement foam that degrades during normal and foreseeable use, particularly when exposed to heat, humidity, and continuous airflow.

COMPLAINT FOR DAMAGES (STRICT PRODUCTS LIABILITY – NEGLIGENCE – FAILURE TO WARN –BREACH OF IMPLIED WARRANTY – FRAUDULENT CONCEALMENT) DEMAND FOR JURY TRIAL

3.  As the foam degrades, it releases respirable particulate matter and volatile organic compounds ("VOCs") that are inhaled and absorbed into lung tissue and the bloodstream.

4.  These toxic byproducts are associated with inflammation, oxidative stress, DNA damage, and carcinogenic processes.

5.  Prior to the June 14, 2021 recall, Defendants possessed knowledge—through supplier warnings, internal testing, field complaints, and adverse event reports—that PE-PUR foam was chemically unstable and hazardous when used in respiratory devices intended for nightly, long-term use.

6.  Despite this knowledge, Defendants continued to market and distribute the devices as safe and effective for chronic respiratory therapy, without adequate warnings to patients or physicians.

7.  Plaintiff Gary Gravelyn, a lifelong non-smoker, used a recalled Philips Respironics CPAP device nightly from approximately 2017 through March 10, 2024, when he returned the device pursuant to the recall program.

8.  On May 13, 2024, Mr. Gravelyn was diagnosed with Stage IV lung cancer.

9.  His treating physicians identified no plausible alternative etiology other than cumulative toxic exposure from prolonged use of the recalled CPAP device.

10. Defendants' conduct reflects a conscious disregard for public safety and human life, giving rise to compensatory and punitive damages.

COMPLAINT FOR DAMAGES (STRICT PRODUCTS LIABILITY – NEGLIGENCE – FAILURE TO WARN –BREACH OF IMPLIED WARRANTY – FRAUDULENT CONCEALMENT) DEMAND FOR JURY TRIAL
2

## II. JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## III. PARTIES

13. Plaintiff Gary Gravelyn is a resident and citizen of California.

14. Defendant Koninklijke Philips N.V. is a Netherlands-based public corporation and the ultimate parent of the Philips corporate group.

15–19. (Defendant allegations unchanged; see prior version.)

## IV. FACTUAL ALLEGATIONS

20. From approximately 2017 through March 10, 2024, Plaintiff used a Philips Respironics DreamStation CPAP device nightly as prescribed.

21. During normal use, the PE-PUR foam degraded and released respirable particles and chemical emissions, including toluene diamine and toluene diisocyanate—substances known to be toxic and carcinogenic.

22. Plaintiff inhaled and ingested these substances nightly, resulting in cumulative toxic exposure and cellular injury to lung tissue.

23. Defendants were aware years before the June 14, 2021 recall that PE-PUR foam degraded under foreseeable conditions of use.

COMPLAINT FOR DAMAGES (STRICT PRODUCTS LIABILITY – NEGLIGENCE – FAILURE TO WARN –BREACH OF IMPLIED WARRANTY – FRAUDULENT CONCEALMENT) DEMAND FOR JURY TRIAL

3

24. Defendants delayed disclosure, minimized known risks, and failed to provide timely replacement devices or adequate warnings.

25. Plaintiff returned his recalled CPAP device on March 10, 2024; however, by that time, irreversible injury had already occurred.

26. On May 13, 2024, Plaintiff was diagnosed with Stage IV lung cancer.

27. On July 15, 2024, Plaintiff was hospitalized with bilateral pulmonary emboli.

28. Plaintiff has never smoked and has no occupational, environmental, or lifestyle-based carcinogenic exposures sufficient to explain his diagnosis.

29. Throughout his career, Plaintiff worked exclusively in office-based, indoor professional environments that were clean, climate-controlled, and free from industrial dust, chemicals, fumes, or airborne toxins.

30. Plaintiff never worked in manufacturing, construction, mining, chemical processing, or any occupation involving carcinogenic exposures.

31. In September 2024, Plaintiff's counsel submitted a Late-Participation Request to BrownGreer PLC for inclusion in the Philips Respironics Personal Injury Settlement Program. Plaintiff was advised that he was ineligible and could pursue independent litigation.

32. In 2025, medical imaging and clinical findings revealed further progression of Plaintiff's cancer, requiring changes to his treatment regimen.

33. Throughout 2025, Plaintiff's overall health has significantly declined as a direct result of the cancer and its complications.

COMPLAINT FOR DAMAGES (STRICT PRODUCTS LIABILITY – NEGLIGENCE – FAILURE TO WARN –BREACH OF IMPLIED WARRANTY – FRAUDULENT CONCEALMENT) DEMAND FOR JURY TRIAL

4

34. Plaintiff has been admitted to emergency departments on at least five (5) occasions, with multiple visits requiring overnight admission and intensive care unit ("ICU") monitoring.

35. Due to his declining health, Plaintiff will be required to take a leave of absence from employment, resulting in additional economic loss and loss of earning capacity.

36. Plaintiff alleges these facts on personal knowledge as to his own conduct and experiences, and on information and belief as to Defendants' conduct, corporate knowledge, testing, internal communications, and decision-making, which are uniquely within Defendants' possession, custody, and control. Plaintiff will seek discovery to further particularize Defendants' roles and internal knowledge.

## V. CAUSES OF ACTION

**FIRST CAUSE OF ACTION – STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**

37. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 24 as though fully set forth herein.

38. Defendants designed, manufactured, and sold CPAP devices containing PE-PUR foam that was unreasonably dangerous and defective when used as intended.

39. The foreseeable risks of harm posed by the foam degradation outweighed any purported benefits of the design.

40. Safer, feasible alternative designs and materials were available and could have eliminated or substantially reduced the risk of harm.

COMPLAINT FOR DAMAGES (STRICT PRODUCTS LIABILITY – NEGLIGENCE – FAILURE TO WARN –BREACH OF IMPLIED WARRANTY – FRAUDULENT CONCEALMENT) DEMAND FOR JURY TRIAL

5

41. As a direct and proximate result of Defendants' defective design, Plaintiff sustained catastrophic injuries, including Stage IV lung cancer.

## SECOND CAUSE OF ACTION – NEGLIGENCE

42. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 27 as though fully set forth herein.

43. Defendants owed a duty to exercise reasonable care in the design, testing, manufacture, inspection, and marketing of their respiratory devices.

44. Defendants breached that duty by, inter alia, failing to adequately test the stability of the PE-PUR foam, ignoring known risks, and continuing sales after discovering the hazard.

45. Defendants' negligence was a substantial factor in causing Plaintiff's injuries and damages.

## THIRD CAUSE OF ACTION – FAILURE TO WARN

46. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 30 as though fully set forth herein.

47. Defendants knew or should have known that the PE-PUR foam degraded and emitted toxic substances harmful to users.

48. Defendants failed to provide adequate warnings or instructions to Plaintiff, prescribing physicians, or the public.

49. Defendants failed to warn of known dangers. Had proper warnings been provided, Plaintiff would have discontinued use and avoided injury.

50. Plaintiff was injured as a result.

**FOURTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

51. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 33 as though fully set forth herein.

52. The CPAP device was not fit for its intended purpose and was not of merchantable quality within the meaning of California Commercial Code § 2314.

53. Defendants' breach of implied warranty was a substantial factor in causing Plaintiff's injuries.

**FIFTH CAUSE OF ACTION – FRAUDULENT CONCEALMENT (Rule 9(b))**

54. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 36 as though fully set forth herein. This cause of action is pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b).

55. Defendants possessed material, non-public information demonstrating that PE-PUR foam was chemically unstable and degraded during foreseeable conditions of use.

56. By no later than 2015, Defendants received supplier warnings, internal testing data, field complaints, and adverse event reports confirming degradation and toxic off-gassing.

COMPLAINT FOR DAMAGES (STRICT PRODUCTS LIABILITY – NEGLIGENCE – FAILURE TO WARN –BREACH OF IMPLIED WARRANTY – FRAUDULENT CONCEALMENT) DEMAND FOR JURY TRIAL

7

57. Defendants intentionally concealed and suppressed material facts regarding the instability and toxicity of the PE-PUR foam from regulators, physicians, and consumers.

58. Defendants' concealment constituted an active course of conduct, including selective disclosure, omission of known risks, and continued marketing of the devices as safe.

59. Plaintiff reasonably relied on Defendants' omissions and partial representations.

60. Plaintiff suffered damages including progressive cancer and economic loss.

61. Defendants failed to disclose that:

(a) PE-PUR foam degradation resulted in chronic inhalation of toxic particulates;

(b) The devices were unsafe for long-term, nightly use;

(c) The risk included serious pulmonary injury and increased cancer risk.

62. Defendants instead represented the devices as safe and suitable for chronic respiratory therapy through labeling, marketing, and regulatory submissions.

63. Defendants' concealment was intentional and motivated by profit and avoidance of regulatory action.

64. Plaintiff reasonably relied on Defendants' omissions and representations in continuing nightly use.

65. Plaintiff could not reasonably discover Defendants' fraud until after his May 13, 2024 diagnosis.

COMPLAINT FOR DAMAGES (STRICT PRODUCTS LIABILITY – NEGLIGENCE – FAILURE TO WARN –BREACH OF IMPLIED WARRANTY – FRAUDULENT CONCEALMENT) DEMAND FOR JURY TRIAL

8

66. As a direct result of Defendants' fraudulent concealment, Plaintiff suffered catastrophic injury, cancer progression, ICU admissions, loss of income, and declining health.

67. Defendants' concealment was not mere nondisclosure, but an active course of conduct, including the selective disclosure of benign information, omission of known risks, continued marketing of the devices as safe for long-term nightly use, and failure to warn regulators, physicians, and consumers of known carcinogenic hazards associated with PE-PUR foam degradation.

68. Defendants' conduct was willful, fraudulent, oppressive, and carried out with conscious disregard for the health and safety of consumers, entitling Plaintiff to punitive damages under Cal. Civ. Code § 3294.

## V. STATUTE OF LIMITATIONS, DELAYED DISCOVERY, AND TOLLING

69. Defendants are estopped from asserting any statute of limitations defense based on the doctrines of delayed discovery, continuing exposure, and fraudulent concealment.

70. Plaintiff did not discover, and could not reasonably have discovered, the causal connection between his injuries and Defendants' misconduct until his May 13, 2024 diagnosis of Stage IV lung cancer, at which time the nature and cause of his injuries first became reasonably apparent.

71. Defendants affirmatively concealed material facts regarding the degradation, toxicity, and carcinogenic risks of the PE-PUR foam, thereby preventing Plaintiff from discovering his claims earlier despite the exercise of reasonable diligence.

72. Plaintiff's exposure to Defendants' defective device was continuous and ongoing through March 10, 2024, when the CPAP device was returned pursuant to the recall, further tolling accrual.

73. As a result of Defendants' concealment and omissions, all applicable statutes of limitations were tolled until Plaintiff's discovery of the injury and its wrongful cause.

## VI. DAMAGES

74. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered severe and permanent injuries, including but not limited to progressive Stage IV lung cancer, significant physical pain, emotional distress, anxiety, loss of enjoyment of life, and loss of independence.

75. Plaintiff has incurred substantial past medical expenses and will continue to incur future medical costs, including expenses for oncology care, diagnostic imaging, medications, hospitalizations, emergency treatment, and palliative care.

76. In 2025, following clinical evidence of further cancer progression, Plaintiff's treating physicians were required to modify his medical treatment regimen to address worsening disease.

77. Plaintiff has been admitted to hospital emergency departments on at least five (5) occasions, several of which required overnight hospitalization and intensive care unit (ICU) monitoring due to acute and life-threatening complications.

78. Throughout 2025, Plaintiff has experienced a significant decline in overall health, including chronic fatigue, respiratory compromise, and diminished functional capacity.

COMPLAINT FOR DAMAGES (STRICT PRODUCTS LIABILITY – NEGLIGENCE – FAILURE TO WARN –BREACH OF IMPLIED WARRANTY – FRAUDULENT CONCEALMENT) DEMAND FOR JURY TRIAL
10

79. As a result of his declining medical condition, Plaintiff will be required to take a leave of absence from work, resulting in lost wages, loss of earning capacity, and loss of employment-related benefits.

80. Plaintiff has also suffered and continues to suffer non-economic damages, including physical pain and suffering, emotional distress, mental anguish, and loss of quality of life.

81. Defendants' conduct was willful, oppressive, fraudulent, and carried out with conscious disregard for the health and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive and exemplary damages.

## VII. PRAYER FOR RELIEF

82. WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

a. For general damages according to proof at trial;

b. For special damages, including past and future medical expenses and lost earnings;

c. For punitive and exemplary damages pursuant to California Civil Code § 3294, in an amount sufficient to punish Defendants and deter similar misconduct;

d. For pre-judgment and post-judgment interest as permitted by law;

e. For costs of suit incurred herein; and

f. For such other and further relief as the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 15, 2025                                    LAW OFFICES OF SUNITA KAPOOR

_____

Sunita Kapoor, LL.M.
Attorney for Plaintiff
4115 Blackhawk Plaza Circle,
Suite 100, Danville, CA 94506
(925) 351-6789
skapoorlaw@gmail.com

COMPLAINT FOR DAMAGES (STRICT PRODUCTS LIABILITY – NEGLIGENCE – FAILURE TO WARN –BREACH OF IMPLIED WARRANTY – FRAUDULENT CONCEALMENT) DEMAND FOR JURY TRIAL

12

# VERIFICATION

I, Gary Gravelyn, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 18th day of December, 2025, at Lafayette, California.

Gary Gravelyn
Plaintiff